David B. Shemano (State Bar No. 176020)
dshemano@peitzmanweg.com
PEITZMAN WEG LLP
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Tel: (310) 552-3100
Fax: (310) 552-3101

Attorneys for Whorl, LLC and Timothy Robinson

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SOLIDUS NETWORKS, INC., d/b/a Pay by Touch, a/f/k/a Pay by Touch Solutions, a Delaware Corporation, *et al.*,<br><br>Debtors. | Case No.: 2:07-bk-20027-TD<br><br>Chapter 7<br><br><br><br><br><br>Adversary No. 2:14-ap-01158-TD |
| OZ MASTER FUND, LTD., DENARIUS TOUCH, L.L.C., HIGHBRIDGE INTERNATIONAL LLC, OZ FINANCIAL INVESTORS II, INC., and YOU TECHNOLOGY INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>WHORL, LLC (as successor and assignee of BIOPAY, LLC); and TIMOTHY ROBINSON,<br><br>Defendants. | **RESPONSE OF WHORL, LLC AND TIMOTHY ROBINSON TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Hearing:**<br>Date:  May 14, 2014<br>Time:  11:00 a.m.<br>Place:  Courtroom 301<br>     255 East Temple Street<br>     Los Angeles, CA 90012 |

# TABLE OF CONTENTS

I. SUMMARY ................................................................................................................. 2

II. FACTUAL BACKGROUND.................................................................................... 4

    A.    The Underlying Transaction.................................................................. 4

    B.    DIP Financing. ........................................................................................ 4

        1.    Whorl's Objection .................................................................. 5

        2.    Plaintiffs' Reply .................................................................... 6

        3.    The Hearing .......................................................................... 6

        4.    The DIP Order ...................................................................... 7

        5.    The BAP Appeal ................................................................... 7

    C.    The Dismissal Motion ........................................................................... 8

    D.    The Sale Motion .................................................................................... 9

III. THE NEW YORK LITIGATION .......................................................................... 10

IV. THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION TO GRANT
    THE REQUESTED RELIEF ................................................................................ 12

    A.    The Intercreditor Dispute Does Not Arise Under Title 11.................... 13

    B.    The Intercreditor Dispute Does Not Arise In A Case Under Title 11.................. 13

    C.    The Intercreditor Dispute Is Not Related To A Case Under Title 11.................... 13

V. THE COURT SHOULD ABSTAIN FROM ADJUDICATING THIS PROCEEDING
    PURSUANT TO 28 U.S.C. § 1334(C) ................................................................ 16

VI. PLAINTIFFS DO NOT HAVE STANDING TO SEEK AN INJUNCTION ....................... 18

VII. THE COURT IS PROHIBITED BY THE ANTI-INJUNCTION ACT FROM
    GRANTING THE REQUESTED RELIEF ......................................................... 20

    A.    Exceptions To The Anti-Injunction Act Are Narrowly Construed. ...................... 20

    B.    The Granting Of Relief Is Discretionary.............................................. 20

    C.    Plaintiffs Must Establish Entitlement To A Preliminary Injunction Under
        the Traditional Standard. ...................................................................... 21

    D.    The Bankruptcy Exception Is Not Applicable. .................................... 21

    E.    The Relitigation Exception Is Not Applicable. .................................... 22

iii

1.    The Court Did Not Rule On Whorl's Breach Of Contract Claims. .......... 22

2.    The Bankruptcy Court Did Not Have The Power To Enter A Final Order On The Breach Of Contract Claims. ................................................. 24

3.    The Court's Orders Do Not Preclude Whorl's Breach Of Contract Claims Against Plaintiffs. ................................................................ 25

    a.  The Bank Group Cases ........................................................... 25

    b.  Claim Preclusion Does Not Apply Because The Breach Of Contract Claims Were Not At Issue When The Bankruptcy Court Entered Its Orders. ................................. 26

4.    There Is No Conflict Between The Orders And The Relief Requested In The New York Action. ....................................................... 28

5.    Plaintiffs Are Estopped From Asserting Claim Preclusion. ...................... 29

VIII. CONCLUSION ............................................................................................. 30

1

# **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*A & D Auto Sales, Inc. v. U.S.*,
5
   -- F.3d --, 2014 WL 1345419 (2nd Cir. 2014) ....................................................... 11

6

*In re Atlanta Retail, Inc.*,
   456 F.3d 1277 (11th Cir. 2006).............................................................26, 27, 28
7

*In re Calabria*,
8
   407 B.R. 671 (Bankr. W.D. Pa. 2009) ............................................................... 29

9

*In re Castlerock Properties*,
   781 F.2d 159 (9th Cir. 1986).............................................................................. 18
10

11

*Chick Kam Choo v. Exxon Corp.*,
   486 U.S. 140 (1988) ...............................................................................20, 23
12

*Chick Kam Choo v. Exxon Corp.*,
13
   486 U.S. 151 ......................................................................................... 20

14

*In re Consolidated Pioneer Mortg. Entities*,
   205 B.R. 422 (9th Cir. BAP 1997) .................................................................... 19
15

16

*In re Crown Vantage, Inc.*,
   421 F.3d 963 (9th Cir. 2005).............................................................................21, 22
17

*Davis v. Yageo Corp.*,
18
   481 F.3d 661 (9th Cir. 2007).............................................................................. 11

19

*In re Eastport Associates*,
   935 F.2d 1071 (9th Cir. 1991) ........................................................................... 13
20

21

*In re Emerald Casino, Inc.*,
   459 B.R. 298 (Bankr. N.D. Ill. 2011)................................................................. 29
22

*In re Excel Innovations, Inc.*,
23
   502 F.3d 1086 (9th Cir. 2007)........................................................................... 21

24

*In re Globe Inv. and Loan Co., Inc.*,
   867 F.2d 556 (9th Cir. 1989)............................................................................. 19
25

26

*In re GSC, Inc.*,
   453 B.R. 132 (Bankr. S.D.N.Y. 2011) ..............................................................25, 26
27

*In re Harris*,
28
   590 F.3d 730 (9th Cir. 2009)............................................................................. 13

*Hatcher v. Avis Rent-A-Car System, Inc.*,
   152 F.3d 540 (6th Cir. 1998) ........................................................................ 23

*In re Haven Eldercare, LLC*,
   503 Fed.Appx. 13 (2nd Cir. 2012) ............................................................... 16

*In re Jacksen*,
   105 B.R. 542 (9th Cir. BAP 1989) ............................................................... 13

*Matter of Lockard*,
   884 F.2d 1171 (9th Cir. 1989) ..................................................................... 22

*Mann v. GTCR Golder Rauner, L.L.C.*,
   351 B.R. 685 (D. Ariz. 2006) ...................................................................... 30

*In re Metaldyne Corp.*,
   409 B.R. 671 (Bankr. S.D.N.Y. 2009), *aff'd* 421 B.R. 620 (S.D.N.Y. 2009) .................. 25, 26

*Montana v. BNSF Ry. Co.*,
   623 F.3d 1312 (9th Cir. 2010) ................................................................. 20, 23

*Muratore v. Darr*,
   375 F.3d 140 (1st Cir. 2004) ....................................................................... 12

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*,
   458 U.S. 50, 102 S.Ct. 2858 (1982) ............................................................ 18

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir. 1993) .......................................................................... 18

*In re Pegasus Gold Corp.*,
   296 B.R. 227 (D. Nev. 2003), *aff'd in part and rev'd in part*,
   394 F.3d 1189 (9th Cir. 2005) ..................................................................... 16

*In re Piper Aircraft Corp.*,
   244 F.3d 1289 (11th Cir. 2001) ................................................................... 26

*Quackenbush v. Allstate Ins. Co.*,
   121 F.3d 1372 (9th Cir. 1997) ..................................................................... 21

*In re Ray*,
   624 F.3d 1124 (9th Cir. 2010) .............................................................. *passim*

*Regions Bank of Louisiana v. Rivet*,
   224 F.3d 483 (5th Cir. 2000) ....................................................................... 23

*Sandpiper Village Condominium Ass'n., Inc. v. Louisiana-Pacific Corp.*,
   428 F.3d 831 (9th Cir. 2005) ....................................................................... 20

*Smith v. Bayer Corp.*,
    131 S.Ct. 2368 (2011) ....................................................................................... 23, 24

*Estate of Spirtos v. One San Bernardino County Superior Court Case Numbered SPR 02211*,
    443 F.3d 1172 (9th Cir. 2006) ............................................................................. 19

*Stern v. Marshall*,
    131 S.Ct. 2594 (2011) ....................................................................................... 17, 24

*Stoe v. Flaherty*,
    436 F.3d 209 (3rd Cir. 2006) .............................................................................. 13

*In re Telecontinuity, Inc.*,
    2011 WL 806097 (Bankr. D. Md. 2011) .......................................................... 15, 16

*Trujillo v. City of Ontario*,
    269 Fed.Appx. 683 (9th Cir. 2008) .................................................................... 29

*In re Tucson Estates, Inc.*,
    912 F.2d 1162 (9th Cir. 1990) ........................................................................... 16

*In re Valdez, Fisheries Development Ass'n, Inc.*,
    439 F.3d 545 (9th Cir 2006) ................................................................... 13, 15, 16

*In re Valley Health System*,
    471 B.R. 555 (9th Cir. BAP 2012) .................................................................... 15

*In re Venegas Munoz*,
    73 B.R. 283 (Bankr.D.P.R.1987) ...................................................................... 19

*Western Systems, Inc. v. Ulloa*,
    958 F.2d 864 (9th Cir. 1992) ............................................................................. 23

**Statutes**

11 U.S.C. § 105(a) ................................................................................... 3, 13, 19, 21

28 U.S.C. § 157 ............................................................................................... 13

28 U.S.C. § 157(a) ........................................................................................... 12

28 U.S.C. § 157(b) ..................................................................................... 12, 17

28 U.S.C. § 157(c) ........................................................................................... 13

28 U.S.C. § 1334 ........................................................................................ 13, 17

28 U.S.C. § 1334(b) ................................................................................... 12, 16

28 U.S.C. § 1334(c) ......................................................................................... 16

28 U.S.C. § 1334(c)(1) .......................................................................................... 16, 21

28 U.S.C. § 1334(c)(2) .......................................................................................... 16

28 U.S.C. § 1651 .................................................................................................. 19

28 U.S.C. § 2283 .................................................................................................. 20

**Other Authorities**

Federal Rule of Bankruptcy Procedure 7012(h)(3) ........................................... 12

Federal Rule of Civil Procedure 12(h)(3) ......................................................... 12

Restatement (Second) of Judgments ................................................................. 29

Whorl, LLC and Timothy Robinson (collectively, "Whorl"), hereby object to the motion for a preliminary injunction (the "Motion"), filed by the above-captioned plaintiffs (the "Plaintiffs").  Capitalized terms used herein have the meaning ascribed to them in the Motion, unless otherwise defined.

## I.

## SUMMARY

In their request for the extraordinary relief of an injunction of a state court proceeding, Plaintiffs accuse Whorl of collaterally attacking this Court's orders, challenging this Court's jurisdiction and authority, and interfering with the administration of these estates.  This Court can read the complaint filed in the New York Action for itself (the "New York Complaint").  As demonstrated by the New York Complaint, Plaintiffs' accusations are false, Whorl does not challenge any order entered by this Court, and there is no basis for extraordinary relief to deny Whorl his day in court.

Pursuant to the New York Action, Whorl alleges that certain of the Plaintiffs[1] breached a prepetition intercreditor agreement (the "Intercreditor Agreement") when Plaintiffs took a lien on certain of the Debtors' assets and, therefore, are liable to Whorl for monetary damages. The chapter 7 trustee (the "Trustee") is not a party to the New York Action and the New York Action will have no effect on the Debtors' estates.

Plaintiffs argue that the New York Action is a relitigation of disputes adjudicated by this Court several years ago and, therefore, is precluded.  Whorl strongly disagrees. Plaintiffs do not cite any language from any order of this Court that ruled upon the dispute currently being litigated in New York – whether the Plaintiffs breached the Intercreditor Agreement when the Plaintiffs took a lien on certain assets.  As set forth below, Whorl repeatedly reserved its right in this Court to assert breach of contract claims against Plaintiffs in a subsequent proceeding.  In response to

---

[1] One of the Plaintiffs, You Technology, Inc., is not a defendant in the New York Action.  For convenience, the defendants in the New York Action are referred to as the Plaintiffs in this opposition.

those reservations of rights, Plaintiffs confirmed on the record to this Court, and this Court separately stated on the record, that Whorl's claims were not being adjudicated by the Bankruptcy Court and would have to be litigated in a separate proceeding.

If Plaintiffs believe the New York Action is precluded, they are entitled to make the argument in the New York Action.  Instead, the Plaintiffs request the extraordinary relief of an injunction from this Court enjoining the New York Action.  This Court should decline Plaintiffs invitation to become embroiled in a dispute that is properly adjudicated by the New York court for the following reasons:

- *This Court does not have subject matter jurisdiction over the dispute.*  The New York Action is a breach of contract claim asserted by one non-debtor against another non-debtor that will have no effect on the bankruptcy estates.  Controlling Ninth Circuit authority makes clear that this Court does not have jurisdiction to adjudicate such a dispute even if this Court's orders may have relevance to the dispute.  Alternatively, the Court should abstain based upon the facts presented.

- *Plaintiffs do not have standing to seek injunctive relief.*  Plaintiffs are not the Trustee.  Ninth Circuit authority makes clear that only the Trustee, and not the Plaintiffs, has standing to seek injunctive relief under section 105(a).

- *The Anti-Injunction Act precludes the Court from enjoining the New York Action.*  Injunctions of state court proceedings are prohibited except in very narrow circumstances.  The only arguable applicable exception is if this Court adjudicated the very issue under consideration in the New York Action and this Court's adjudication was preclusive.  However, the Court never adjudicated the dispute and, even if it did, the Court did not have the power to enter a preclusive judgment.

Accordingly, as set forth below, the Court must deny the Motion and (1) permit Whorl to assert its state law breach of contract claims against Plaintiffs in the New York Action, and (2) permit the New York court to make its own determination concerning whether the New York Action is precluded.

## II.

## **FACTUAL BACKGROUND**

Plaintiffs' factual allegations in the Motion are inadequate and inaccurate.  Most importantly, Plaintiffs fail to submit or highlight to the Court the key operative pleadings and hearing transcripts.  Those pleadings and transcripts make clear that the parties never requested that the Court rule on the intercreditor breach of contract dispute, the Court in fact never ruled on the intercreditor dispute, Whorl reserved all rights regarding the intercreditor dispute, ***and the Plaintiffs acknowledged that those rights would have to be litigated in a separate proceeding***.

### A.    The Underlying Transaction

As set forth in the Motion, Whorl sold certain assets to Solidus Networks, Inc. ("Solidus") in 2005 for a purchase price of $7.5 million in cash and $74.5 million in secured and unsecured notes.  As Plaintiffs were Solidus's senior secured lenders at the time, the sale required Plaintiffs' cooperation and consent.  Pertinently, Plaintiffs consented to the transaction provided that Whorl agreed that the notes were subordinated to payment of the obligations owed to the Plaintiffs and that Whorl would not have a lien on Plaintiffs' collateral.  In exchange, Plaintiffs agreed that Whorl would hold a senior lien on the assets sold by Whorl.  To effectuate the agreement between Plaintiffs and Whorl, (1) the assets were held by a special purpose entity (the "IP Sub"), (2) Whorl was granted a senior pledge of the equity securities of the IP Sub, and (3) Plaintiffs agreed the IP Sub's assets would not become Plaintiffs' collateral.

### B.    DIP Financing

On October 31, 2007, an involuntary petition was filed against Solidus. On November 19, 2007, Solidus filed an emergency motion to approve postpetition financing.  The motion was granted on an interim basis pursuant to an order entered on November 20, 2007.  A continued hearing was then scheduled for December 11, 2007, and another order was entered on December 11, 2007.

On December 14, 2007, Solidus filed a consent to an order for relief, voluntary petitions were filed on behalf of Solidus' affiliates, including the IP Sub, and the Debtors then filed an emergency motion for DIP Financing to be provided by Plaintiffs.  Pertinently, Plaintiffs, in their capacity as the DIP Lenders, required that the IP Sub's assets be pledged to secure the DIP

-4-

1   Financing.  At the hearing on December 17, 2007, Whorl objected to the DIP Financing.  A copy

2   of the transcript of the hearing is attached as Exhibit A to the accompanying Request for Judicial

3   Notice ("RJN").  As reflected in the transcript, while Whorl had many objections, the Intercreditor

4   Agreement was barely referenced.  At the conclusion of the hearing, the Court approved the DIP

5   Financing on an interim basis and scheduled a final hearing for January 25, 2008.  A copy of the

6   order is attached as Exhibit B to the RJN.

7            1.    Whorl's Objection

8            On January 14, 2014, Whorl filed an objection to the DIP Financing, which is attached as

9   Exhibit C to the RJN.  The objection argues that the DIP Financing should be denied because it

10  provided no benefit to the IP Sub as opposed to the other Debtors.  Pertinently, Whorl did not

11  request that the Court interpret the Intercreditor Agreement and did not argue that the Intercreditor

12  Agreement precluded the approval of the DIP Financing.  In fact, Whorl never argued that the

13  Intercreditor Agreement even had any relevance to the proposed DIP Financing other than as a

14  factor to consider when determining whether Plaintiffs were entitled to a good faith finding.

15  Instead, with respect to the Intercreditor Agreement, Whorl explicitly reserved its rights to make

16  claims against Plaintiffs based upon the Intercreditor Agreement when the Intercreditor

17  Agreement was actually at issue:

18          Whorl fully reserves its rights under these and all other agreements
            to enforce and seek damages resulting from the breach of its
19          contractual rights.

20          . . .

21          At a minimum, the proposed Final DIP Order should contain the
            same reservation language regarding Whorl's inter-creditor rights
22          contained in the order approving the Gap Period Financing (¶ 19),
            and Whorl objects to any form of order that does not so provide. But
23          whether or not such a reservation is included, neither the Debtors
            nor any other party to these agreements has sought (properly or
24          otherwise) a judicial declaration determining that the BioPay
            Consent or the Subordination Agreement are not enforceable, or that
25          any of those parties may abrogate the rights thereunder running in
            favor of Whorl. See 11 U.S.C. § 510(a). Until and unless there is an
26          appropriate judicial determination otherwise, these contractual
            obligations must be honored and will be enforced. Whorl reserves
27          all rights in connection with this matter, intends to enforce its rights

28

separately and objects to any effort by the Lenders to prejudice or
limit Whorl's rights.

Exhibit C, pages 206-07.

       2.   <u>Plaintiffs' Reply</u>

On January 17, 2008, Plaintiffs responded to Whorl's objection, which is attached as

Exhibit D to the RJN.  Pertinently, Plaintiffs, like Whorl, did not request that the Court interpret

the Intercreditor Agreement and, like Whorl, did not argue that the Intercreditor Agreement even

had any relevance to the proposed DIP Financing.  Plaintiffs took no issue with Whorl's

reservation of rights against Plaintiffs.

       3.   <u>The Hearing</u>

On January 17, 2008, the Court held a hearing on the DIP Financing.  A copy of the

transcript is attached as Exhibit E to the RJN.  At the hearing, the Intercreditor Agreement was

discussed, including whether the DIP Financing violated the Intercreditor Agreement.  Debtors'

counsel took the position that the effect of the Intercreditor Agreement was ***not*** before the Court

and the Court could approve the DIP Financing without first determining the effect of the

Intercreditor Agreement:

> And Mr. Bogdanoff's comments, again, silence is not a concession
> that the Debtor violated any terms of the pledge agreement. He
> indicated that will be a subject of the separate action, and that will
> be sort out in the wash. I think the issues with respect to the
> enforceability of the consent and the inter-creditor agreement are
> interesting ones, and they are ones that ultimately may be the subject
> of litigation, and it may be that the Debtors get dragged into that
> litigation. ***It's not something that we can address today***.

Exhibit E, page 344 (emphasis added).

After Debtors' counsel represented to the Court that approval of the DIP Financing would

not be an adjudication of Whorl's breach of contract rights against Plaintiffs, Whorl's counsel

requested that Plaintiffs' counsel confirm the understanding that approval of the DIP Financing

would not affect Whorl's rights:

> And whatever rights my client has under the subordination
> agreement in regard to that is not being affected. You believe you've
> satisfied those rights, but you're not attempting to obtain a
> determination that you have satisfied those rights, is that correct?

Exhibit E, page 345.  In response to the query, Plaintiffs' counsel confirmed that approval of the

DIP Financing would not affect Whorl's rights:

> I think that's right. I've been nodding. Mr. Bogdanoff, I haven't
> heard anything that I disagree with yet.

Exhibit E, page 345.

Counsel for Whorl then emphasized to the Court that Whorl was reserving all rights to

later assert a breach of contract claim against Plaintiffs:

> Finally, Mr. Logan opined that insofar as this DIP financing is
> concerned my client has no rights under the subordination
> agreement. The subordination agreement does affect my client's
> rights, and I respect him enormously and his opinions, but I
> respectfully reserve the right to disagree with respect to that issue. In
> other words, if there is a separate contractual or other right that
> flows from the subordination agreement that is impacted by this
> financing, your Honor's orders should not cut off those rights.
>
> Now, Mr. Logan shouldn't worry about that because he got up here
> and said there aren't any rights. So he shouldn't worry about it. I'm
> not saying that there are, but, as I said when I first visited with you
> on the gap financing, there should not be a prejudicial result that
> impacts my client's rights.

Exhibit E, pages 347-48.

### 4.    The DIP Order

On January 28, 2014, the Bankruptcy Court entered the DIP Order, which is attached as

Exhibit F to the RJN.  The DIP Order is a 41-page document that contains extensive findings of

fact and conclusions of law.  The DIP Order does not contain any finding of fact or conclusion of

law that references either the Intercreditor Agreement or Whorl's breach of contract claims based

upon the Intercreditor Agreement.

### 5.    The BAP Appeal

Whorl filed an appeal from the DIP Order.  Attached as Exhibit G is Whorl's opening

brief.  The brief argues that the Bankruptcy Court erred because the DIP Financing provided no

benefit to the IP Sub and the Bankruptcy Court erroneously examined the benefit of the DIP

Financing to the Debtors as opposed to the IP Sub.  Pertinently, the brief does **not** make any

argument that the Bankruptcy Court erred because the DIP Financing violated the Intercreditor

-7-

Agreement.  To the contrary, the brief provides that the Bankruptcy Court did not make any ruling

on the Intercreditor Agreement and Whorl reserved all rights regarding the Intercreditor

Agreement:

> Although the Bankruptcy Court was not called upon to adjudicate,
> and did not adjudicate, whether the Lenders violated their
> prepetition inter-creditor obligations to Whorl in respect of PBT
> Resources and its assets, Whorl has reserved its rights - and hereby
> reiterates its reservation of rights - to enforce and seek damages
> resulting from the breach of those obligations by the Lenders.

Exhibit G, page 453.

Plaintiffs filed a responsive brief, which is attached as Exhibit H to the RJN.  In response

to Whorl's representation that the intercreditor dispute was not adjudicated by the Bankruptcy

Court and was not an issue on appeal, ***Plaintiffs agreed that the Bankruptcy Court never***

***adjudicated the dispute***:

> Whorl also mentions, in passing, that it believes a prepetition
> subordination and intercreditor agreement between the prepetition
> secured lenders and Whorl, in which Whorl agreed that its debt was
> generally subordinated to the debt owed to the prepetition
> secured lenders, prevented the DIP Lenders from taking liens against the
> assets of PBTCR.  ***Whorl mentions this only apparently for "color"***
> ***for it did not seek to adjudicate this issue before the Bankruptcy***
> ***Court and, accordingly, it is not an issue before this Panel in this***
> ***appeal.***

Exhibit H, page 492 (emphasis added).

The BAP affirmed the DIP Order.  The opinion is attached as Exhibit I to the RJN.

Nowhere in the opinion does the BAP make any adjudication concerning the Intercreditor

Agreement or Whorl's breach of contract claims based upon the Intercreditor Agreement.

## C.    <u>The Dismissal Motion</u>

On January 23, 2008, Whorl filed a motion to dismiss the case filed by the IP Sub, which is

attached as Exhibit J to the RJN.  While the motion references the Intercreditor Agreement and

argues that Plaintiffs' conduct during the bankruptcy case was improper, nowhere in the motion

does Whorl argue that the Intercreditor Agreement itself is a basis for dismissal.  Instead, Whorl

argued that the IP Sub case should be dismissed because it was filed without proper authority and

lacked a proper reorganization purpose because of the lack of creditors and operations.  With

1  respect to Whorl's breach of contract claims against Plaintiffs, Whorl once again reserved its

2  rights concerning the Intercreditor Agreement until it was at issue:

3          Whorl intends to pursue its rights and remedies in an appropriate
         civil action against the secured lenders for their intentional violation
4          of Whorl's rights. Whorl reserves all of its rights with respect
         thereto.

5

6  Exhibit J, page 542.

7          On February 11, 2008, Plaintiffs responded to the dismissal motion, which is attached as

8  Exhibit K to the RJN.  While Plaintiffs argued that entry of the DIP Order was dispositive

9  concerning whether the IP Sub's case was filed in good faith, Plaintiffs did not argue that entry of

10  the DIP Order was dispositive concerning whether Plaintiffs had breached the Intercreditor

11  Agreement and, once again, took no issue with Whorl's reservation of rights.

12          On February 25, 2008, the Court held a hearing on the motion.  A copy of the transcript is

13  attached as Exhibit L to the RJN.  The Court denied the motion, finding that the filing was

14  authorized and in good faith.  Nowhere did the Court make any ruling on the Intercreditor

15  Agreement.  To the contrary, ***the Court explicitly made clear that the intercreditor disputes

between Whorl and Plaintiffs were for another day and another proceeding***:

16          It seems to me that those two matters, the -- Mr. Lumsden's
         authority and the substantial substantive bankruptcy purposes that
17          are being pursued in these cases is conclusive that the Whorl motion
         should be denied today.
18

19          I suppose at the same time it seems that given the nature of the
         agreements, given the nature of the investment, that the disputes will
20          probably never end until there is a trial somewhere down the line to
         sort out some of the rights that have been asserted here and some of
21          the claims of wrongdoing can be tried and resolved in a full
         evidentiary hearing.
22

23  Exhibit L, page 669.

24      **D.**      **The Sale Motion**

25          On January 31, 2008, the Debtors filed a motion for authority to sell assets, including the

26  IP Sub's assets.  On February 20, 2008, Whorl filed an objection, reiterating the arguments made

27  in the dismissal motion that the IP Sub was not properly a debtor and the case should be

28  dismissed.  A copy of the objection is attached as Exhibit M to the RJN.  Once again, Whorl did

-9-

1  not argue that the sale of the Whorl Assets should be denied because of the Intercreditor

2  Agreement.  The Court's denial of the dismissal motion effectively mooted Whorl's sale

3  objection.  On February 29, 2008, and March 28, 2008, the Bankruptcy Court entered orders

4  approving sales of the Debtors' assets, including the IP Sub's assets, to buyers including YT

5  Acquisition Corp., an entity established by Plaintiffs to credit bid for the assets.  Copies of the

6  orders are attached as Exhibits N and O to the RJN.  The orders contain no reference to or ruling

7  regarding Whorl or the Intercreditor Agreement.

8

9                                          **III.**

10                              **THE NEW YORK LITIGATION**

11          On February 11, 2014, Whorl commenced the New York Action.  A copy of the New York

12  Complaint is attached as Exhibit P to the RJN.  Whorl alleges that Plaintiffs' taking of the lien on

13  the IP Sub's assets breached Plaintiffs' contractual obligations under the Intercreditor Agreement.

14  Whorl also alleges that the conduct breached the covenant of good faith and fair dealing and

15  unjustly enriched Plaintiffs.  Whorl seeks monetary damages as relief.

16          Plaintiffs mischaracterize the relief sought in the New York Action as a collateral attack on

17  this Court's prior orders.  Plaintiffs do not, and cannot, point to a single paragraph in the New

18  York Complaint that collaterally attacks any order entered by this Court.  On page 20[2] of the

19  Motion, Plaintiffs allege that in the New York Action, "Whorl, among other things, is challenging

20  this Court's power to:"

21          •  "*enjoin future assertions of liens and claims pursuant to the DIP Order.*"  **False**.

22              Nowhere does Whorl challenge this Court's power to enjoin anything regarding the

23              DIP Order.  Nowhere does Whorl challenge the validity of any claim or lien

24              granted pursuant to the DIP Order.  Nowhere does Whorl assert any right, claim or

25              interest in any collateral subject to the DIP Order.  Instead, the New York Action is

26              narrowly limited to determining the intercreditor consequences of Plaintiffs taking

27              a valid lien on the IP Sub's assets.

28  _____
[2] The page number refers to the PACER number at the top of the page.

- "*retain jurisdiction over the disposition of the IP Sub's assets.*"  **False**.  Nowhere does Whorl assert any right, claim or interest in the assets.  Instead, the New York Action is narrowly limited to determining the intercreditor consequences of the disposition of the assets by Plaintiffs.

- "*find that the Debtors were entitled to obtain credit and incur debt from the DIP Lenders . . . including a grant of the DIP Liens.*"  **False**.  Nowhere does Whorl challenge this Court's power to make any finding in connection with the DIP Order or the power of the Court to authorize the granting of the DIP Liens.  To the contrary, the New York Action narrowly addresses the intercreditor consequences of the granting of the valid DIP Liens.

- "*find such financing was provided in good faith*."  **False**.  Again, nowhere does Whorl challenge this Court's power to make any finding in connection with the DIP Order.  Instead, the intercreditor effect of the good faith finding will be litigated in the New York Action.[3]

- "*determine that the Debtors' prepetition inter-creditor agreements did not preclude the Debtors' entry into the DIP Financing agreements.*"  **False**.  Again, nowhere does Whorl challenge this Court's power to make any finding in connection with the DIP Order.  Whorl never argued, and does not argue, that the Intercreditor Agreement precluded the Debtors from entering into any agreement or granting postpetition liens to the Plaintiffs on the IP Sub's assets.  Instead, the intercreditor consequence of the Debtors granting Plaintiffs valid liens on the assets will be litigated in the New York Action.

- "*find that the purchaser under the Core Asset Sale provided the highest and best*

---

[3] While the consequence, if any, of the good faith finding should be for the New York court to decide, the preclusive effect of a good faith finding is limited to the specific matter before the bankruptcy court at the time of the finding.  *Davis v. Yageo Corp.*, 481 F.3d 661, 681 (9th Cir. 2007) ("While Dux/Davis did argue that the reorganization plan should not be confirmed because it was not filed in good faith, the breach of fiduciary duty claim with respect to the directors and the majority shareholder was not raised in, much less decided by, the bankruptcy court.");  *A & D Auto Sales, Inc. v. U.S.*, -- F.3d --, 2014 WL 1345499 *9 (2nd Cir. 2014) (limiting collateral estoppel effect of good faith finding to specific issue before the court).

*offer for the IP Sub's assets in good faith.*" **False**.  Nowhere does Whorl challenge this Court's power to make any finding in connection with the Core Asset Sale. Instead, the intercreditor consequences of the Court's findings, to the extent relevant, will be litigated in the New York Action.

- "*preclude the holders of liens from asserting any such liens against the Prepetition and DIP Lenders for liability in connection with the Core Asset Sale on any theory of law or equity.*" **False**.  Nowhere does Whorl challenge this Court's power to preclude such a challenge based upon the existence of a lien.  Nowhere does Whorl assert any claim as a current lienholder.  Whorl's claims are narrowly limited to intercreditor monetary claims for breach of contract.

To emphasize, nowhere in the New York Complaint does Whorl assert that the orders entered in the bankruptcy case are invalid, void, or without effect.  Nowhere does Whorl challenge the validity of the liens granted on the IP Sub's assets.  Nowhere does Whorl assert any interest in the IP Sub's assets.  All that Whorl asserts is that Plaintiffs' conduct breached the Intercreditor Agreement and Whorl is entitled to monetary damages as relief – an intercreditor dispute between two non-debtors that will have no effect on these estates.

## IV.

### THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION TO GRANT THE REQUESTED RELIEF

Pursuant to Federal Rule of Civil Procedure 12(h)(3), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(h)(3), a court must dismiss a proceeding "if the court determines at any time it lacks subject-matter jurisdiction." *Muratore v. Darr*, 375 F.3d 140, 147-48 (1st Cir. 2004).

Bankruptcy jurisdiction under 28 U.S.C. § 1334(b) extends to "all civil proceedings arising under title 11 or arising in or related to a case under title 11." All such proceeding are referred to bankruptcy courts pursuant to 28 U.S.C. § 157(a). Under 28 U.S.C. § 157(b), bankruptcy courts may hear and determine "all core proceedings arising under title 11, or arising in a case under title 11." Under 28 U.S.C. § 157(c), bankruptcy courts may hear, but not finally determine, non-core

proceedings that are "otherwise related to a case under title 11."

### A.      The Intercreditor Dispute Does Not Arise Under Title 11.

The intercreditor dispute between Whorl and Plaintiffs based upon a breach of a prepetition agreement is not a core proceeding that arises "under" title 11. Proceedings arising "under" title 11 "are those that are created or determined by a statutory provision of title 11." *In re Eastport Associates*, 935 F.2d 1071, 1076 (9th Cir. 1991). State law monetary claims based on a breach of a prepetition agreement do not arise under title 11. *In re Harris*, 590 F.3d 730, 737 (9th Cir. 2009) ("Harris's breach of contract claim is not created or determined by Title 11; it is a common law action, therefore it does not qualify for 'arising under' jurisdiction.").[4]

### B.      The Intercreditor Dispute Does Not Arise In A Case Under Title 11.

The intercreditor dispute is not a core proceeding that arises "in" a case under title 11. To arise "in" a case under title 11, the proceeding must be "an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." *In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010). A proceeding does not arise "in" title 11 merely because the underlying claim is based upon facts that occurred in connection with a bankruptcy case. To be core, the proceeding, "*by its nature*, could arise only in the context of a bankruptcy case." *Stoe v. Flaherty*, 436 F.3d 209, 217-18 (3rd Cir. 2006).

### C.      The Intercreditor Dispute Is Not Related To A Case Under Title 11.

Finally, a proceeding is "related to" a bankruptcy case "if the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Valdez, Fisheries Development Ass'n, Inc.*, 439 F.3d 545, 547 (9th Cir 2006). In a transparent attempt to create "related to" jurisdiction, Plaintiffs originally alleged in their complaint for injunctive relief that if Whorl is successful in the New York Action, the estates will be in breach of representations and warranties provided in connection with the sale of assets to YT Acquisition Corp. and,

---

[4] While this proceeding seeks injunctive relief pursuant to section 105(a), this proceeding does not arise under section 105(a) for purposes of subject matter jurisdiction. *In re Jacksen*, 105 B.R. 542, 544 (9th Cir. BAP 1989) ("Section 105(a) does not, however, broaden the bankruptcy court's jurisdiction, which must be established separately under 28 U.S.C. Sections 157 and 1334.").

therefore, Plaintiffs will have an administrative expense claim against the estates.  [Adversary Docket No. 1, ¶¶ 34, 43].  Based upon this allegation, Plaintiffs originally named the Trustee as a defendant in this proceeding.

In response to the allegation, the Trustee filed a reply in support of its objections to Plaintiffs' then outstanding proofs of claim against the estates.  [Docket No. 1338].  In that reply, the Trustee made clear that any such alleged claim would be frivolous.  Accordingly, the Trustee insisted that the Court should proceed to disallow Plaintiffs' outstanding claims so that the cases can be closed.

To resolve the Trustee's concern and ensure that the Trustee would not oppose the relief sought in this proceeding, the Plaintiffs entered into stipulations with the Trustee disallowing Plaintiffs' claims against the Debtors' estates.  [Docket Nos. 1343-47].  Paragraph 5 of each of the stipulations provides: "The Trustee (a) does not oppose the injunctive relief requested by the Claimant in the Adversary Proceeding and (b) will not oppose the injunctive relief requested by the Claimant in the Adversary Proceeding as long as the injunctive relief does not impact the administration of the estate."

On April 3, 2014, this Court entered Orders disallowing Plaintiffs' proofs of claims pursuant to the stipulations with the Trustee.  [Docket Nos. 1348-1352].  On April 10, 2014, Plaintiffs dismissed their claims against the Trustee in this proceeding.  [Adv. Docket No. 14].

As a result of the stipulated disallowances of Plaintiffs' claims and dismissal of the Trustee from this proceeding, the New York Action is a pure intercreditor dispute and the outcome will have no conceivable effect on the bankruptcy estates.  Consequently, this Court does not have subject matter jurisdiction to adjudicate the New York Action, even though the subject matter of the dispute concerns actions that occurred during the bankruptcy cases and orders entered by this Court may have relevance to the dispute.

Directly on point is *In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010).  In *Ray,* the bankruptcy court approved a sale of property jointly owned by the debtor and a co-owner free and clear of liens, and the case was closed.  Thereafter, a party sued the sellers and the buyer in state court for violation of a prepetition right of first refusal.  The defendants moved to reopen the bankruptcy case, which was granted, and the bankruptcy court ruled the sale order precluded the

state court lawsuit.  The Court of Appeals reversed, holding that the state court action was not a core proceeding and that the bankruptcy erred by exercising jurisdiction after the case had been closed because of the lack of any effect on the administration of the estate.  *Accord, In re Valdez, Fisheries Development Ass'n, Inc*., 439 F.3d 545 (9th Cir 2006) (where enforcement and interpretation of bankruptcy court approved settlement agreement would have no effect on the estate, bankruptcy court did not have jurisdiction to enforce and interpret agreement); *In re Valley Health System*, 471 B.R. 555 (9th Cir. BAP 2012) (court dismissed intercreditor lawsuit for lack of subject matter jurisdiction even where reorganization plan governed rights of parties); *In re Telecontinuity, Inc*., 2011 WL 806097 (Bankr. D. Md. 2011) (court dismissed intercreditor lawsuit for lack of subject matter jurisdiction even where bankruptcy financing order may have provided a preclusion defense).

Plaintiffs argue that this Court should adjudicate the dispute because Whorl is collaterally attacking this Court's prior orders.  Whorl denies that it is collaterally attacking any order.  But even if the Court concluded that the New York Action could be characterized as a collateral attack, the Court would still be lacking jurisdiction.  In *Ray,* the Court of Appeals specifically rejected the argument that a collateral attack on a bankruptcy court order meant that the bankruptcy court necessarily had jurisdiction to adjudicate the asserted claims, noting that collateral attacks in second courts are routine, can be handled by the second court, and such occurrences do not create subject matter jurisdiction in the absence of any effect on the estate.  *In re Ray*, 624 F.3d at 1135.

Plaintiffs also argue that this Court should adjudicate the dispute because certain of the orders entered by the Court retained exclusive jurisdiction to resolve disputes relating to the orders.  Whorl disagrees that the orders retained jurisdiction over the disputes at issue in the New York Action.  Again, however, even if the Court concluded that the retention provisions were broad enough to encompass the New York Action, the Court would still be lacking jurisdiction.  In *Ray*, the Court of Appeals specifically rejected the argument that the retention of jurisdiction provision in a court order permitted the bankruptcy court to exercise jurisdiction in the absence of

1   any effect on the estate.  *Id*. at 1136 n.8. [5]

2        The *Ray, Valdez* and *Valley Health* cases are directly on point and controlling.  Just as the

3   state court actions in *Ray, Valdez*, *Valley Health* and *Telecontinuity* could have no conceivable

4   effect on the respective estates, Plaintiffs have dismissed their claims against these estates and the

5   Trustee has made clear that the intercreditor dispute between Whorl and Plaintiffs will have no

6   effect on these estates.  This Court cannot and should not exercise jurisdiction over an intercreditor

7   dispute that will not have any effect on the Debtors' estates.

8

9                                          **V.**

10            **THE COURT SHOULD ABSTAIN FROM ADJUDICATING**
        **THIS PROCEEDING PURSUANT TO 28 U.S.C. § 1334(c)**

11

12        Even if this Court finds that it does have subject matter jurisdiction, based upon the facts

13   presented, this Court should abstain from adjudicating this proceeding in accordance with 28

14   U.S.C. § 1334(c). This proceeding satisfies each of the elements of mandatory abstention under 28

15   U.S.C. § 1334(c)(2) with the exception that diversity jurisdiction may exist. However, while

16   abstention may not be mandatory, permissive abstention is appropriate under 28 U.S.C. §
    1334(c)(1).

17        In *In re Tucson Estates, Inc.*, 912 F.2d 1162, 166-67 (9th Cir. 1990), the Court of Appeals

18   identified 12 factors that should be considered in determining whether permissive abstention is

19   appropriate.  Based upon an examination of these factors, the Court should exercise its discretion

20   to abstain.

21            1.    The effect or lack thereof on the efficient administration of the estate if a

22                  court recommends abstention.

23        As set forth above, the outcome of the New York Action will not affect the administration

24

25   _____

    [5] Furthermore, even if the Court had jurisdiction, it could not have "exclusive" jurisdiction.  While

26   bankruptcy courts have exclusive jurisdiction over bankruptcy cases, bankruptcy courts have non-
    exclusive jurisdiction over all other bankruptcy proceedings.  28 U.S.C. § 1334(b).  Language in

27   an order that purports to reserve exclusive jurisdiction in violation of section 1334(b) is a nullity.
    *In re Pegasus Gold Corp.*, 296 B.R. 227, 233 (D. Nev. 2003), *aff'd in part and rev'd in part*, 394

28   F.3d 1189 (9th Cir. 2005); *In re Haven Eldercare, LLC*, 503 Fed.Appx. 13, 15 (2nd Cir. 2012).

                                          -16-

of these estates.

       2.     <u>The extent to which state law issues predominate over bankruptcy issues.</u>

This factor favors abstention because the issues to be adjudicated in the New York Action are New York state law breach of contract claims.

       3.     <u>The difficulty or unsettled nature of the applicable law.</u>

The New York Action presents state law breach of contract claims.

       4.     <u>The presence of a related proceeding commenced in state court or other nonbankruptcy court.</u>

The New York Action is pending and ready to proceed.

       5.     <u>The jurisdictional basis, if any, other than 28 U.S.C. § 1334.</u>

There is no federal question presented in the New York Action.  It is possible that there is federal jurisdiction based upon diversity.

       6.     <u>The degree of relatedness or remoteness of the proceeding to the main bankruptcy case.</u>

As set forth above, the New York Action has no effect on the administration of the estates. The Trustee is ready to close the cases regardless of the presence or outcome of the New York Action.  In fact, it is entirely fortuitous the bankruptcy cases are even open six years after the relevant bankruptcy matters.

       7.     <u>The substance rather than form of an asserted "core" proceeding.</u>

This factor strongly favors abstention, because the proceeding is not a core proceeding and this Court cannot enter a final judgment.  Furthermore, even if this proceeding is a core proceeding, this Court may not enter a final judgment.  In *Stern v. Marshall*, 131 S.Ct. 2594 (2011), the Supreme Court held that even if a proceeding is a statutory core proceeding under 28 U.S.C. § 157(b), a non-Article III bankruptcy court cannot enter a final judgment in the proceeding unless the proceeding involves the adjudication of a "public right" as opposed to a "private right."  Whatever the scope of the "public right" exception, a breach of contract claim between two non-debtors based on state law is the quintessential example of private right that entitles the litigants to a final adjudication by an Article III court and precludes entry of a final

order by a bankruptcy court in the absence of consent. *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 84, 102 S.Ct. 2858, 2878 (1982); *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993); *In re Castlerock Properties*, 781 F.2d 159 (9th Cir. 1986).

        8.    The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.

This factor is not applicable.

        9.    The burden of the bankruptcy court's docket.

Whorl has no knowledge concerning this Court's docket, but presumably this Court's time is better spent on bankruptcy matters as opposed to state law breach of contract claims between non-debtors.

        10.    The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.

Whorl repeatedly gave notice that he would commence action against Plaintiffs in state court. Presumptively, the New York court should determine the preclusive effect of this Court's orders on the New York Action. In fact, the Intercreditor Agreement provides that any dispute between the parties shall be adjudicated by a New York court. By asking this Court to enjoin the New York Action, the Court should presume Plaintiffs are forum shopping.

        11.    The existence of a right to a jury trial.

Whorl has a right to a jury trial with respect to the state law breach of contract claims.

        12.    The presence in the proceeding of nondebtor parties.

The only parties to the proceeding are Plaintiffs, Whorl and other non-debtor lenders.

Based upon the facts and circumstances, this Court should abstain so that Whorl's state law breach of contract claims governed by New York law are adjudicated in the New York Action.

## VI.

## **PLAINTIFFS DO NOT HAVE STANDING TO SEEK AN INJUNCTION**

Pursuant to the Motion, Plaintiffs request that this Court enjoin the New York Action.

This Court's authority to enjoin a state court proceeding necessarily arises under section 105(a) of the Bankruptcy Code, which is the Bankruptcy Code version of the "All-Writs Act" set forth in 28 U.S.C. § 1651.

As a general rule, only the trustee has authority to sue on behalf of a bankruptcy estate. Without the consent of the trustee or prior authorization of the bankruptcy court, third parties do not have standing to assert estate causes of action. *Estate of Spirtos v. One San Bernardino County Superior Court Case Numbered SPR 02211*, 443 F.3d 1172 (9th Cir. 2006). In this case, the Trustee has refused to become involved in the intercreditor dispute between Whorl and Plaintiffs other than to ensure that this proceeding does not affect the administration of the cases so the cases can be closed.

The general rule concerning standing applies to requests for injunctive relief under section 105(a). Standing to seek injunctive relief under section 105(a) is limited to the debtor, debtor in possession, and the trustee. *In re Consolidated Pioneer Mortg. Entities*, 205 B.R. 422, 425 (9th Cir. BAP 1997) ("And more importantly, '[s]tanding ... to enjoin the actions of a third party rests with the debtor, debtor in possession, or the trustee, and not with the third party.' 2 *Collier on Bankruptcy*, ¶ 105.02 at 105–12 (15th ed.1996); *In re Venegas Munoz*, 73 B.R. 283, 285 (Bankr.D.P.R.1987). Therefore, appellant, a third party to the proceeding, lacks standing to bring a motion for injunctive relief pursuant to § 105(a)."). Consequently, Plaintiffs do not have standing to seek an injunction of the New York Action pursuant to section 105(a).

Plaintiffs suggest section 362 as an alternative source for injunctive relief. While the Ninth Circuit has never conclusively determined whether creditors have standing to seek relief for violation of the stay, the Ninth Circuit has conclusively determined that parties who are not creditors cannot seek such relief. *In re Globe Inv. and Loan Co., Inc.*, 867 F.2d 556 (9th Cir. 1989).

As set forth above, Plaintiffs are not creditors of the estate. Furthermore, even if Plaintiffs are technically creditors of the estate, they do not seek relief in their capacity as creditors or for the purpose of benefiting the estates. Instead, they seek relief in their capacity as parties to the prepetition Intercreditor Agreement who are being sued in the New York Action. Consequently, they do not have standing. *Id.* at 559 ("The appellants became creditors of Globe's estate by filing

a proof of claim with the bankruptcy court. However, they have not pursued this action as Globe's creditors, but rather as owners of the Saratoga property.").

## VII.

### THE COURT IS PROHIBITED BY THE ANTI-INJUNCTION ACT FROM GRANTING THE REQUESTED RELIEF

Pursuant to 28 U.S.C. § 2283 (the "Anti-Injunction Act"), federal courts are prohibited from enjoining a state court proceeding "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Plaintiffs do not argue that the "aid of its jurisdiction" exception applies.[6] Instead, Plaintiffs reply upon the "bankruptcy" and "relitigation" exceptions. Neither exception to the Anti-Injunction Act applies.

### A.    Exceptions To The Anti-Injunction Act Are Narrowly Construed

The Anti-Injunction Act "is designed to prevent friction between federal and state courts by barring federal intervention in all but the narrowest of circumstances." *Sandpiper Village Condominium Ass'n., Inc. v. Louisiana-Pacific Corp.*, 428 F.3d 831, 842 (9th Cir. 2005). "[T]he exceptions are narrow and are not to be enlarged by loose statutory construction." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146-47 (1988). Accordingly, and as conceded by Plaintiffs in the Motion, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Montana v. BNSF Ry. Co.*, 623 F.3d 1312, 1315 (9th Cir. 2010).

### B.    The Granting Of Relief Is Discretionary

Because injunctions are strongly disfavored, it is within this Court's discretion to deny an injunction even if an injunction may otherwise fit within an exception. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 151 ("Of course, the fact that an injunction *may* issue under the Anti-Injunction

---

[6] As the Trustee has refused to become involved, does not claim that the New York Action affects this Court's jurisdiction over the estates and their assets, and has represented that the New York Action will not affect the administration of the estates, Plaintiffs' restraint is understandable. Furthermore, the "aid of its jurisdiction" exception does not apply in any event because the applicable contested matters were concluded years ago. *Sandpiper Village Condominium Ass'n., Inc. v. Louisiana-Pacific Corp.*, 428 F.3d 831, 843-47 (9th Cir. 2005) (exception did not apply because first case had concluded).

1    Act does not mean that it *must* issue.).

2         Furthermore, as set forth above, pursuant to 28 U.S.C. 1334(c)(1), this Court may, "in the

3    interest of justice, or in the interest of comity with State courts or respect for State law," abstain

4    from adjudicating this proceeding and permit the New York court to resolve the disputed issues.

5            **C.**     **Plaintiffs Must Establish Entitlement To A Preliminary Injunction Under the**

6                   **Traditional Standard**

7         A request for a preliminary injunction pursuant to section 105(a) of the Bankruptcy Code

8    is governed by the traditional standard for a preliminary injunction, which requires the moving

9    party to meet its burden of proof of demonstrating "(1) a strong likelihood of success on the

10   merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a

11   balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain

12   cases)."  *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007).  "Alternatively, a

13   court may grant the injunction if the plaintiff demonstrates either a combination of probable

14   success on the merits and the possibility of irreparable injury or that serious questions are raised

     and the balance of hardships tips sharply in his favor."  *Id*.

15           **D.**     **The Bankruptcy Exception Is Not Applicable**

16        Even assuming Plaintiffs have standing to seek an injunction under the Bankruptcy Code

17   (which they do not), the bankruptcy exception does not apply.

18        Citing *In re Crown Vantage, Inc.*, 421 F.3d 963 (9th Cir. 2005), Plaintiffs argue that a

19   bankruptcy court may enjoin litigation "that threatens the integrity of the bankruptcy estate."  In

20   *Crown Vantage*, the debtor confirmed a plan that created a liquidating trust.  The liquidating

21   trustee sued a third party, which in turn sued the liquidating trustee in a separate action.  The

22   liquidating trustee then requested an injunction of the second litigation, arguing that the litigation

23   was precluded by the "Barton Doctrine," which requires a litigant to obtain court permission

24   before suing a court-appointed receiver.

25        The Court of Appeals had no problem holding that litigation against a liquidating trustee

26   that violates the Barton Doctrine warrants an injunction, because "courts appointing a receiver are

27   invested with broad power to issue orders barring actions which would interfere with its

28   administration of that estate."  *Id*. at 976.  However, the case has no applicability to the present

-21-

dispute.  The Barton Doctrine, which is integral to the administration of a bankruptcy estate, is not

at issue.  More importantly, there is absolutely no evidence that the New York Action interferes in

any way with the administration of the Debtors' estates. The Trustee, who is the party with

standing to inform this Court whether the New York Action might interfere with the

administration of the estates, has expressly refused to become involved precisely because Whorl

and Plaintiffs are engaged in an intercreditor dispute that will have no effect on the administration

of the estates.

  Citing *Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. 2009), Plaintiffs also argue that the Court

may enjoin activity that violates the automatic stay.  That is not doctrinally correct, because the

automatic stay is ***automatic***.  All activity that violates the automatic stay is enjoined as a matter of

law.  If Plaintiffs believe Whorl is violating the stay, then they should encourage the Trustee to

move to hold Whorl in contempt for violation of the stay.  But as set forth above, the Trustee has

made clear he has no interest in the intercreditor dispute because resolution of the dispute will not

affect the estates.

  In any event, nowhere do Plaintiffs explain how the New York Action is a violation of the

stay. Whorl does not assert any claim against the Trustee or the estates in the New York Action.

Whorl does not claim an interest in any estate property.  All that Whorl seeks to do is assert a

breach of contract claim against a non-debtor based upon a prepetition agreement.  Such conduct

in no way implicates the automatic stay.  *See generally, Matter of Lockard*, 884 F.2d 1171 (9th

Cir. 1989).

  **E.**  **The Relitigation Exception Is Not Applicable**

  Plaintiffs' argument, in a nutshell, is that when the Bankruptcy Court entered the DIP

Order and sale order, Whorl's breach of contract claims were adjudicated and, therefore, the New

York Action is barred by claim and issue preclusion.  Consequently, Plaintiffs' right to an

injunction rises or falls on whether the relitigation exception is applicable.  It is not.

    1.  The Court Did Not Rule On Whorl's Breach Of Contract Claims

  "Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of

the second court."  *Smith v. Bayer Corp.*, 131 S.Ct. 2368, 2375-76 (2011).  Consequently, the

relitigation exception is "strict and narrow" and can "issue only if preclusion is clear beyond

peradventure. " *Chick Kam Choo v. Exxon Corp.*, 486 U.S. at 148; *Smith v. Bayer Corp.*, 131 S.Ct. at 2376.

Pertinently, the exception does not apply simply because a claim might be barred by claim preclusion.  Instead, the federal court must have actually ruled on the exact issue under consideration in the state court.  For example, if the litigant could have raised an issue in the federal court but did not, the issue might possibly be barred by claim preclusion in the second litigation, but the relitigation exception does not apply and the federal court is without authority to enjoin the state court litigation.  *Chick Kam Choo v. Exxon Corp.*, 486 U.S.  at 148 ("an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court"); *Montana v. BNSF Ry. Co.*, 623 F.3d 1312, 1315 (9th Cir. 2010) ("A conflict is only possible, however, where the federal court has actually decided the claims or issues presented in the subsequent state action."); *Regions Bank of Louisiana v. Rivet*, 224 F.3d 483, 488 (5th Cir. 2000) ("It is insufficient that a claim or issue could have been raised in the prior action: The relitigation exception requires that the claims or issues that the federal injunction is to insulate from litigation in state proceedings 'actually have been decided by the federal court.'"); *Hatcher v. Avis Rent-A-Car System, Inc.*, 152 F.3d 540, 543 (6th Cir. 1998) ("Because the relitigation exception does not encompass the full parameters of *res judicata*, a federal court cannot enjoin the bringing in state court of claims that could have been raised in a prior federal action but were not in fact litigated there.").[7]

As set forth above, Whorl never asked the Bankruptcy Court to rule on the merits of its breach of contract claims against Plaintiffs.  Whorl never argued that the merits of its opposition to the DIP Financing and other requested relief depended on the merits of its breach of contract claims.  Whorl repeatedly reserved its rights regarding the breach of contract claims.  Similarly, Plaintiffs never asked the Bankruptcy Court to rule on the breach of contract claims, never

---

[7] In *Western Systems, Inc. v. Ulloa*, 958 F.2d 864 (9th Cir. 1992), the Court of Appeals, disagreeing with five other circuits' interpretation of *Chick Kam Choo v. Exxon Corp.*, held that the relitigation exception extends beyond matters actually litigated to matters where a prior federal decision "necessarily precludes" a certain result, even if that result was not itself actually litigated. In light of the subsequent *Smith v. Bayer Corp.* and *Montana v. BNSF Ry. Co* decisions, it is likely that the case has been effectively overruled to the extent relevant.

disputed Whorl's reservation of rights, and confirmed on the record that the breach of contract claims would have to be litigated in a separate proceeding.  This Court stated on the record that the breach of contract claims would have to be litigated in a separate proceeding.  There is no language in any order of this Court addressing the claims.  Accordingly, as the Bankruptcy Court never ruled on the merits of the breach of contract claims, the relitigation exception does not apply.  *Smith v. Bayer Corp.*, 131 S.Ct. at 2379 ("A federal court and a state court apply different law. That means they decide distinct questions. The federal court's resolution of one issue does not preclude the state court's determination of another.").

> ### 2.   The Bankruptcy Court Did Not Have The Power To Enter A Final Order On The Breach Of Contract Claims

Even if the Bankruptcy Court had ruled on the breach of contract claims (which it did not), the ruling would not have preclusive effect and, therefore, the relitigation exception would not apply.

In order for the Court's ruling to have preclusive effect, the ruling must have been a final order.  As discussed in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), the power of Article I bankruptcy courts to enter final orders that have preclusive effect is limited.  A bankruptcy court's ability to enter a final order is limited to adjudicating a "public right."  If Whorl's breach of contract claim does not fall within the "public right" doctrine, the Bankruptcy Court's power is limited to making a recommendation to the District Court.  Until the District Court approves the recommendation, the Bankruptcy Court's recommendation does not have preclusive effect.  *Id.*

Whorl's breach of contract claim is a state law claim based upon a prepetition agreement asserted by one non-debtor against another non-debtor.  Such a claim is the epitome of a claim upon which this Court does not have the power to enter a final order.  *Id.* at 2611-14; *In re Ray*, 624 F.3d 1124 (9th Cir. 2010) (claim against sellers and buyer of assets at an approved section 363 sale based upon breach of contractual right of first refusal was not a core proceeding).

Accordingly, because the Bankruptcy Court's ruling (if there was one) was never approved by the District Court, it never became final, does not have preclusive effect, and the relitigation exception does not apply.

-24-

3.    The Court's Orders Do Not Preclude Whorl's Breach Of Contract Claims
Against Plaintiffs

Plaintiffs do not cite a single case that holds that the entry of a financing or sale order is claim preclusive with respect to a non-debtor's rights under an intercreditor agreement against another non-debtor. To the contrary, every bankruptcy court that has addressed the fact pattern has rejected the argument.

a.    The Bank Group Cases

It is common for groups of lenders to act collectively and utilize an agent to administer the loan to the debtor. It is also common for disputes to arise among the lenders or between a lender and the agent concerning whether the agent is authorized to act on behalf of the group or whether the agent's proposed action will violate the intercreditor agreement. When bankruptcy courts are presented with one of these intercreditor disputes, bankruptcy courts traditionally overrule the objection to the proposed transaction assuming there is facial authority for the agent to act on behalf of the group, but preserve whatever contractual rights the objecting lender may have against the agent for later adjudication in the non-bankruptcy forum.

For example, in *In re GSC, Inc.*, 453 B.R. 132 (Bankr. S.D.N.Y. 2011), the debtor sought to sell assets free and clear of liens of a bank group. During the sale process, certain of the banks sued the agent bank for various breaches of the prepetition credit agreement, including claims based on conduct in the sale process. The court appointed a chapter 11 trustee, who then moved to sell the assets to the agent bank over the objection of the plaintiff banks. The court overruled the objection and approved the sale to the agent bank, but acknowledged that the approval of the sale would have no effect on the state court lawsuit against the agent. *Id*. at 173.

Similarly, in *In re Metaldyne Corp*., 409 B.R. 671 (Bankr. S.D.N.Y. 2009), *aff'd*, 421 B.R. 620 (S.D.N.Y. 2009), the debtor sought authority to sell assets free and clear of liens of a bank group. The agent consented to the sell free and clear. A member of the bank group objected, arguing that the agent's consent violated the member's rights under the intercreditor agreement. After holding that the agent had the power to consent to the sale free and clear, the court made clear that the approval of the sale would have no effect on any claims that the member might have against the agent under the intercreditor agreement. In fact, the court doubted it even had the

-25-

jurisdiction to adjudicate such intercreditor claims. *Id*. at 679-80.

These cases are directly applicable. Whorl and Plaintiffs are parties to the Intercreditor Agreement that prohibited Plaintiffs from taking a lien on the IP Sub's assets. When Plaintiffs indicated their intent to take a lien on the Whorl Assets, Whorl gave notice to Plaintiffs that if they took a lien on the Whorl Assets, Plaintiffs would be in breach of the Intercreditor Agreement. Plaintiffs disagreed they would be in breach, and proceeded to take the lien. In response, Whorl has never argued that the Debtors did not have the power to grant the lien, or that the Bankruptcy Court did not have the power to approve the lien, or that the lien would not be valid and enforceable. Instead, Whorl reserved its right to assert a breach of contract claim, which is exactly what happened in the *GSC* and *Metaldyne* cases – the bankruptcy court approved the challenged transactions and left it to the state court to determine whether the transactions created claims under the intercreditor agreement.

      b.   <u>Claim Preclusion Does Not Apply Because The Breach Of Contract</u>
              <u>Claims Were Not At Issue When The Bankruptcy Court Entered Its</u>
              <u>Orders</u>

In order for claim preclusion to apply, both cases must involve the same causes of action. It is not enough that both cases have a common nucleus and facts. Instead, it is necessary that the claim alleged in the later case must have existed at the time of the first case and the litigant could have obtained full relief in the first case. *In re Piper Aircraft Corp.*, 244 F.3d 1289 (11th Cir. 2001) (breach of contract claim asserted by plan co-proponent against other co-proponent not barred by confirmation order).

Directly on point is *In re Atlanta Retail, Inc.*, 456 F.3d 1277 (11th Cir. 2006). Each of Kodak and Wachovia made prepetition secured loans to the debtor. Pursuant to subordination and intercreditor agreements, Kodak's loans were subordinated to Wachovia's loans. The debtor filed for bankruptcy and sought postpetition secured financing from Wachovia, which was approved. Kodak did not object to the financing. The debtor then sold its assets free and clear, and proceeds were distributed to Wachovia on account of its senior lien. Kodak did not object to the distribution. The creditors' committee and Wachovia entered into a settlement validating Wachovia's lien and enforcing the subordination agreement. Kodak objected that the settlement

-26-

agreement should not affect Kodak's rights under the subordination agreement, but the court expressly found the subordination agreement enforceable. The debtor confirmed a plan which again validated the lien, and Kodak did not object.

Subsequently, Kodak sued Wachovia in state court for breach of contract, fraud and tortious interference based upon the allegation that Wachovia had fraudulently induced Kodak to make a prepetition subordinated loan to the debtor.

Wachovia then sought an injunction from the bankruptcy court enjoining the state court action, arguing that the claims were precluded because the bankruptcy court had approved the validity and priority of Wachovia's claims and liens during the case, including finding subordination agreement enforceable. The bankruptcy court agreed and entered the injunction.

The Court of Appeals reversed. Pertinently, the Court held that claim preclusion did not apply because Kodak could not have obtained full relief based upon its breach of contract claims in connection with the bankruptcy proceedings at which the relevant orders were entered (postpetition financing, sale of assets, 9019 settlement, confirmation). While the various proceedings validated the enforceability of the subordination agreement, Kodak was not challenging the enforceability of the subordination agreement. Instead, it was alleging a violation of the subordination agreement which entitled it to monetary damages from Wachovia. The Court concluded that because each of the applicable bankruptcy proceedings was a contested matter, not an adversary proceeding between Kodak and Wachovia, the bankruptcy court could not have granted Kodak monetary damages even if Kodak had raised the issue at those hearings. In summary, "the various motions in the contested proceeding context did not provide an adequate vehicle to assert fully the claims it raises in the state court action." *Id*. at 1287.

The Court also rejected the argument that claim preclusion applied because Kodak could have commenced a separate adversary proceeding in the bankruptcy court. The underlying dispute in the state court – whether Wachovia's conduct was a breach of the subordination agreement – was never presented as an issue to the bankruptcy court and the bankruptcy court never had to consider the issue in making any of the rulings. In fact, the Court emphasized that it was the burden of Wachovia to file a declaratory relief action if it wanted certainty on the issue. *Id*. at 1288-89.

The Court then went through each of the bankruptcy court orders and concluded that with respect to each (1) the state law claims were not presented and litigated, and (2) the state law claims were not necessarily considered as matter of law.  For example, with respect to the financing order, the Court determined:  "The order did not touch upon claims between co-creditors. Clearly, none of the issues before the court in this proceeding required the court to consider the allegations of fraud by one co-creditor (Kodak) against another (Wachovia). Therefore, this order and the New York action are not based on the same nucleus of operative fact; nor do they constitute the same cause of action."  *Id*. at 1289.

The case is directly on point.  Whorl's claim that Plaintiffs' conduct violated the Intercreditor Agreement and entitled Whorl to monetary damages was never presented to the Bankruptcy Court for adjudication and the Bankruptcy Court was never required to adjudicate the merits of the claim at any time during the case.  The Bankruptcy Court could never have awarded Whorl monetary damages at any of the applicable hearings.[8]  Furthermore, and unlike Kodak, Whorl specifically and repeatedly reserved the claim at every opportunity, and Plaintiffs never disputed Whorl's right to reserve rights.  In fact, this Court specifically recognized that adjudication of the breach of contract claims would require a separate evidentiary proceeding.

If Plaintiffs wanted certainty that their conduct did not violate the Intercreditor Agreement, then they should have filed a declaratory relief action.  Instead, they decided to take their chances and elected to rely upon their substantive interpretation of the Intercreditor Agreement.  This Court should permit the New York court to determine whose interpretation of the Intercreditor Agreement is correct.

4.      <u>There Is No Conflict Between The Orders And The Relief Requested In The New York Action</u>

Citing allegedly similar language in Whorl's objection to the DIP Financing and the New York Complaint, Plaintiffs argue that the "NY Court cannot grant the relief requested by Whorl without creating an actual conflict with this Court's and the BAP's prior findings and order."

---

[8] In fact, it is doubtful the Court would have even had subject matter jurisdiction to adjudicate the breach of contract claim if properly presented, because the claim would be asserted by a non-debtor against another non-debtor with no conceivable effect on the estates.

Motion, p. 23.  Plaintiffs are wrong, because they confuse background information with the actual

relief requested.

As set forth above, while Whorl made the Court and BAP aware of the Intercreditor

Agreement when it objected to the DIP Financing, Whorl never argued that the Court did not have

the power or authority to approve the DIP Financing and grant Plaintiffs a lien on the assets of the

IP Sub.  Instead, Whorl argued that the Court should not approve the DIP Financing because of the

lack of benefit to the IP Sub's estate, and that was the issue appealed to the BAP.

As the Court can see from its review of the New York Complaint, the New York Action

does not challenge any finding of fact or conclusion of law made, or any order entered, by this

Court, including that (1) Whorl's senior lien was primed, (2) the IP Sub's asserts were sold free

and clear, (3) Plaintiffs acted in good faith in making loans to the Debtors and buying the Debtors'

assets, and (4) Plaintiffs provided reasonably equivalent value in exchange for the assets.

To the contrary, the New York Action is *dependent* on the validity of the orders entered by

this Court.  The question presented in the New York Action is effectively limited to whether the

valid granting of liens approved by this Court has intercreditor consequences.  There is no conflict.

### 5.    Plaintiffs Are Estopped From Asserting Claim Preclusion

Section 26(1)(a) of the Restatement (Second) of Judgments provides that claim preclusion

will not apply where the "parties have agreed in terms or in effect that the plaintiff may split his

claim, or the defendant has acquiesced therein."  *See generally, Trujillo v. City of Ontario*, 269

Fed.Appx. 683 (9th Cir. 2008).

Whorl repeatedly and explicitly reserved its rights to bring the breach of contract claims,

Plaintiffs never took issue with the reservation of rights, and Plaintiffs confirmed on the record to

the Bankruptcy Court that Whorl's breach of contract claims would have to be litigated in a

separate proceeding.  Whorl relied upon Plaintiffs' confirmation.  Based upon these facts, black-

letter principles of waiver and estoppel apply to preclude Plaintiffs from asserting preclusion as a

defense.  *In re Emerald Casino, Inc.*, 459 B.R. 298, 303-05 (Bankr. N.D. Ill. 2011); *In re

Calabria*, 407 B.R. 671, 679 (Bankr. W.D. Pa. 2009).

Plaintiffs argue that the reservation of rights was not effective because the applicable

orders do not incorporate the reservations.  Plaintiffs cite no authority for the proposition that an

-29-

explicit reservation of rights is only effective if the reservation is incorporated in the applicable order.  To the contrary, provided that the reservation is clear and the other party is on notice, the reservation of rights is effective to defeat a preclusion defense.  *Mann v. GTCR Golder Rauner, L.L.C.*, 351 B.R. 685, 697 n.5 (D. Ariz. 2006), *denying reconsideration,* 2006 WL 3496885 *4, *6 (D. Ariz. 2006).

## VIII.

## <u>CONCLUSION</u>

Whorl gave clear notice to Plaintiffs that if they proceeded to violate the Intercreditor Agreement, they would be sued.  Plaintiffs acknowledged in open court and in papers to the Bankruptcy Appellate Panel that this Court did not rule on Whorl's breach of contract claims. This Court stated on the record that the breach of contract claims would have to be adjudicated in a separate evidentiary hearing.  Whorl suffered a real injustice in 2007 and 2008 when Plaintiffs convinced this Court that the proverbial melting ice cube justified extraordinary relief in favor of Plaintiffs.  This time there is no exigency justifying extraordinary relief.  Whorl is entitled to its day in court, and the Court should deny the Motion.

DATED:  April 30, 2014                              PEITZMAN WEG LLP


                                                    By:____/s/ David B. Shemano_____
                                                         David B. Shemano
                                                    Attorneys for Whorl, LLC and Timothy Robinson

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**PEITZMAN WEG LLP
2029 Century Park East, Suite 3100
Los Angeles, CA 90067**

A true and correct copy of the foregoing document entitled (*specify*): **RESPONSE OF WHORL, LLC AND TIMOTHY ROBINSON TO MOTION FOR PRELIMINARY INJUNCTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 30, 2014** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jennifer Leland     jleland@peitzmanweg.com
- Christopher J Petersen     cjpetersen@blankrome.com, grams-m@blankrome.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Timothy Yoo (TR)     tjytrustee@lnbrb.com, tyoo@ecf.epiqsystems.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **April 30, 2014** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Judge**
Honorable Thomas B. Donovan
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1352 / Courtroom 1345
Los Angeles, CA 90012

☐ Service information continued on attached page

**Attorneys for Plaintiffs Plainfield Direct LLC & Plainfield Direct West IV LLC**
Caldwell Leslie & Proctor PC
David WilIIngham
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017

Howard J. Kaplan
45 Rockefeller Plaza, Suite 2000
8 New York, New York 10111

{00097525 v1}This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

**Attorneys for Plaintiffs Oz Master Fund, Ltd., Denarius Touch, L.L.C., Highbridge International LLC, Oz Financial Investors II, Inc., and You Technology, Inc.**

Christopher J. Petersen
BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, CA 90067

Kenneth L. Bressler
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 30, 2014 | Diana Tehranfar | /s/ Diana Tehranfar |
|---|---|---|
| Date | Printed Name | Signature |

---

{00097525 v1}This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**